UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES BERNARD STARKE, JR.,

                              Plaintiff,

            -against-

OFFICER FUENTES, et al.,

                              Defendants.

**<u>OPINION & ORDER</u>**

25-CV-03108 (PMH)

PHILIP M. HALPERN, United States District Judge:

Charles Bernard Starke, Jr. ("Plaintiff"), previously detained at the Rockland County Jail,[1]

brings this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, alleging that various

municipal/police entities and individuals allegedly associated therewith violated his rights under

numerous state and federal laws. (Docs. 20, 21, together, the "Fourth Amended Complaint" or

"FAC").[2] The Court, on August 8, 2025, dismissed, *sua sponte*, twenty-one of the twenty-nine

named defendants in the FAC. (Doc. 29 at 3-12, 15). Accordingly, Plaintiff asserts that the

following remaining defendants violated his rights both during the events leading up to, and during

his detention at Rockland County Jail: (1) Rockland County; (2) Rockland County Sergeant Lowe

---

[1] Plaintiff alleges that as of the filing of the Fourth Amended Complaint, he was a pretrial detainee at the Rockland County Jail. (Doc. 20 at 15). As of the date of this Order, Plaintiff has updated his address to 21 FM 247, Huntsville, TX 77320. (Doc. 95). The Court notes that citations to specific pages of the Fourth Amended Complaint and other filings on the docket correspond to the pagination generated by ECF.

[2] Plaintiff filed the original pleading on April 10, 2025. (Doc. 1). Subsequently, and prior to the issuance of summons or completion of service upon any defendants, Plaintiff filed multiple amended pleadings, applications for emergency and injunctive relief, and motions to compel production of documents, all without leave of the Court. Accordingly, by Order dated May 8, 2025, Chief Judge Laura Taylor Swain denied each of Plaintiff's requests for injunctive, emergency, and discovery-related relief, and *inter alia*, directed Plaintiff to file a "single operative pleading," identified as the "Fourth Amended Complaint," that "names as defendants all parties he seeks to sue, asserts all his claims for relief, and alleges facts to support each claim against each defendant." (Doc. 19). Plaintiff, apparently in response to the Court's Order, then filed Doc. 20 and Doc. 21, which the Court has construed as the Fourth Amended Complaint. (*See* Doc. 29).

("Lowe"); (3) Rockland County Sergeant Lopez ("Lopez," and together with Rockland County and Lowe, "Moving Defendants"); (4) Kelvin Zuniga ("Zuniga"); (5) Officer Fuentes ("Fuentes"); (6) Officer Mazzella ("Mazzella"); (7) Officer Matthew Laya ("Laya"); and (8) "All State Actors" (collectively, "Defendants").[3] (*See generally* FAC).

Liberally construed, Plaintiff presses four claims for relief against Moving Defendants under 42 U.S.C. § 1983 stemming from an alleged April 2025 strip search and June 2, 2025 assault: (i) unreasonable search in violation of the Fourth Amendment; (ii) excessive force in violation of the Fourteenth Amendment; (iii) retaliation in violation of the First Amendment; and (iv) violation of constitutional rights under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (*See generally* FAC). Plaintiff also purports to press state law claims against Moving Defendants for assault, battery, false imprisonment, intentional infliction of emotional distress, negligent supervision and retention, and medical negligence. (*Id.*).

Moving Defendants filed their motion to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6) on January 9, 2026. (Doc. 79). Moving Defendants filed their memorandum of law in support of their motion to dismiss and supporting declarations on that same day. (Doc. 80, "Def. Br."; Doc. 81 "Weissman Decl."; Doc. 82, "Byron Decl."). Plaintiff filed opposition on January 29, 2026 (Docs. 86, 87, together, "Pl. Br.") and Moving Defendants filed reply on March 2, 2026 (Doc. 91) ("Reply").[4]

---

[3] Mazzella and Laya filed an Answer on October 10, 2025 (Doc. 42), and Fuentes and Zuniga filed Answers on January 6, 2026. (Docs. 72, 73). Plaintiff fails to define and does not include any allegations as to defendant "All State Actors" in the FAC. Accordingly, Plaintiff's claims against defendant "All State Actors" are dismissed *sua sponte* for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

[4] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint,

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion to dismiss and draws them from the Fourth Amended Complaint and Plaintiff's opposition to the extent consistent therewith. See *Vail*, 68 F. Supp. 3d at 427. The Court draws all reasonable inferences in Plaintiff's favor. *See Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438, 445 (S.D.N.Y. 2020).

Plaintiff was held as a pre-trial detainee in the Rockland County Jail, as of March 24, 2025, and until at least June 11, 2025. (FAC, Doc. 20 at 4-9).[5] Plaintiff, in or about April 2025, had a visit at the Rockland County Jail with a member of the outside public, Teresa-elizabeth Murphy. (*Id.* at 19). Plaintiff alleges that after the visit, he was subjected to a "full body scan," and then was "strip searched for human degradation" despite the full body scan. (*Id.*). Subsequently, on June 2, 2025 at approximately 9:10 a.m., Plaintiff claims he was assaulted while using the phone by Defendants Lopez and Lowe. (*Id.* at 19). Plaintiff alleges that while he was using the phone, he was told to get off and "lock in" to his cell, but "asked for a moment to finish." (*Id.*). Plaintiff then claims that Defendant Lowe "plac[ed] his right hand at the back of plaintiffs left shoulder to guide

---

they may be read 'as supplements to th[e] pleadings . . . .'" (quoting *Boyer v. Channel 13, Inc.*, No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005))); *see also Davis v. Cnty. of Suffolk*, No. 18-CV-00303, 2020 WL 7699919, at *4 (E.D.N.Y. Oct. 30, 2020) ("[I]n deciding a motion to dismiss a pro se complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a pro se litigant attaches to his opposition papers." (internal citations and quotation marks omitted)), *adopted by* 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020). Accordingly, the Court considers on this motion the additional allegations in Plaintiff's opposition submission, to the extent consistent with the Fourth Amended Complaint.

[5] For ease of reference, the Court's references to the FAC will include specification as to Doc. 20 or Doc. 21, as follows: "FAC, Doc. 20 at [   ]." The Court utilizes a similar reference scheme for Plaintiff's opposition, which is also comprised of multiple filings. (*See* Docs. 86, 87).

him" back to his cell and then drew his "OC spray weapon"[6] when Plaintiff resisted. (Pl. Br., Doc. 87 at 2). Plaintiff was then directed to place his hands on the wall, and then directed to his cell. (*Id.*).

This litigation followed.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[7] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions,

---

[6] The Court understands "OC Spray" to refer to "oleoresin capsicum aerosol spray" a chemical irritant akin to pepper spray. *See Nicholas v. United States*, No. 23-CV-10626, 2026 WL 636846, at *2 (S.D.N.Y. Mar. 6, 2026).

[7] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

I.    Administrative Exhaustion

As an initial matter, the Moving Defendants argue that Plaintiff's federal claims must be dismissed for failure to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). (Def. Br. at 5-9, 11-13).

The PLRA provides that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints. However, a district court may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). "Indeed, courts within this District routinely grant motions to dismiss where a plaintiff's non-exhaustion is clear from the face of the complaint." *Hickman v. City of New York*, No. 20-CV-04699, 2021 WL 3604786, at *2 (S.D.N.Y. Aug. 12, 2021) (collecting cases). "To properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Even so, "a prisoner need not specifically plead or demonstrate exhaustion in the complaint because failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Rucker v. Giffen*, 997 F.3d 88, 92 (2d Cir. 2021); *see also Hudson v. Kirkey*, No. 20-CV-00581, 2023 WL 2324988, at *4 (N.D.N.Y. Mar. 2, 2023) ("[E]xhaustion is an affirmative defense, and the burden of proof at all times, remains on the defendant."). The requirements of the PLRA apply the same to both

prisoners and pretrial detainees. *See Perez v. Ponte*, 236 F. Supp. 3d 590, 604 (E.D.N.Y. 2017) (citing *United States v. Al-Marri*, 239 F. Supp. 2d 366, 367, n.1 (S.D.N.Y. 2002)).

The FAC makes no reference to the grievance process apart from one offhand reference to "grievance forms" in a section of the FAC entitled "Preservation Demands." (FAC, Doc. 20 at 21). It is, therefore, not clear from the face of the FAC that Plaintiff failed to exhaust his administrative remedies.[8] *See Woodhouse v. City of Mount Vernon*, No. 13-CV-00189, 2016 WL 354896, at *8 (S.D.N.Y. Jan. 27, 2016) ("If exhaustion is not an affirmative pleading requirement, then plaintiff[] cannot be penalized for what [he] do[es] not say in [his] pleadings about [his] efforts to exhaust." (alterations in original, internal quotation marks omitted)). Without some opportunity to consider exhaustion from the four corners of the complaint, the Court cannot utilize the additional exhaustion related documents and affidavit submitted by Defendants to support their motion.[9]

The motion to dismiss on the basis that Plaintiff failed to exhaust his administrative remedies is, therefore, denied.

II.    Failure to State a Claim - Federal Claims for Relief

Moving Defendants also move on the additional ground that Plaintiff has failed to state a claim as to his federal claims. Construing the Fourth Amended Complaint liberally, Plaintiff presses several claims under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very

---

[8] Although Plaintiff discusses the filing of grievances in his opposition brief, this does not supplement the Fourth Amended Complaint, as Plaintiff says nothing about exhaustion in his pleading. *Vail*, 68 F. Supp. 3d at 427. In any event, even if the Court were to consider his opposition, there appears to be, at the very least, a factual issue as to whether the remedies under the PLRA were "unavailable" to Plaintiff (*see* Pl. Br., Doc. 86 at 3-5; Pl. Br., Doc. 87 at 1; Reply at 6-7), which the Court may not resolve at this stage. *See Lugo v. Federal Bureau of Prisons*, No. 23-CV-05602, 2025 WL 2616511, at *8-9 (S.D.N.Y. Jul. 28, 2025) *adopted by* 2025 WL 2396647 (S.D.N.Y. Aug. 19, 2025).

[9] In light of the Court's determination on exhaustion herein, the Court need not, and does not, consider Moving Defendants' arguments concerning the Court's consideration of the grievance exhibits attached to the Byron Declaration. (*See* Def. Br. at 5-10).

person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)). The Court will address the plausibility of Plaintiff's claims for relief *seriatim.*

A.    First Claim for Relief: Unreasonable Search

Plaintiff's first claim for relief is for unreasonable strip search against Moving Defendants in violation of the Fourth Amendment. (FAC, Doc. 20 at 4; FAC, Doc. 21 at 19). Moving Defendants argue that Plaintiff's conclusory allegations fail to state a claim and, in any event, the search was reasonable due to the facility's "legitimate penological interest." (Def. Br. at 16).

"While 'the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell,' 'inmates retain a limited right of bodily privacy under the Fourth Amendment.'" *Baltas v. Jones*, No. 21-CV-00469, 2023 WL 8827880, at *17 (D. Conn. Dec. 21, 2023) (citing *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016)). Further, it is well-settled that the Fourth Amendment's protections "extend to [both] prisoners and pretrial detainees." *See Holland v. City of New York*, 197 F. Supp. 3d 529, 542 (S.D.N.Y. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 545, 559 (1979)). When evaluating a detainee's claim that an officer infringed his right to bodily privacy: "(1) [f]irst, the court must determine whether the [detainee] has exhibit[ed] an actual, subjective expectation of bodily privacy; and (2) second, the court must determine whether the prison officials had sufficient justification to intrude on [the detainee's] [F]ourth

8

[A]mendment rights." *Singleton v. City of New York*, No. 20-CV-08570, 2022 WL 4620174, at *9 (S.D.N.Y. Sept. 30, 2022) (citing *Harris*, 818 F.3d at 57). "A strip search violates the Fourth Amendment 'if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish.'" *Id.* (citing *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006)).

Plaintiff states that "[i]n April 2025" "[a]fter a visit to the jail from Teresa-elizabeth Murphy," he was "strip searched for human degradation despite going through a full body scan." (FAC, Doc. 20 at 19). Notably, Plaintiff never specifies what part any of the Moving Defendants played in this alleged "strip search." In fact, the only individual Plaintiff mentions by name in conjunction with the alleged search is an "Officer Doswell" who is not named as a defendant in the FAC, stating that he was "illegally strip searched, after going through a body scan in jail by Officer Doswell." (*Id.* at 4). Such conclusory and non-specific allegations are insufficient to state a claim that Moving Defendants violated Plaintiff's rights. *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("bald assertions and conclusions of law" are insufficient to survive a 12(b)(6) motion).

Even had Plaintiff sufficiently pled specific allegations concerning the alleged strip search, which he has not, the Court agrees that the correctional facility did indeed have a "legitimate penological goal" in determining whether Plaintiff had smuggled anything into the facility due to his meeting with "Teresa-elizabeth Murphy," a member of the general public. *See Smith v. City of New York*, No. 14-CV-05934, 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) (commenting that "the policy of strip searching inmates after contact visits or upon departing for court appearances does not, in itself, violate the constitution").

Accordingly, Plaintiff has failed to sufficiently plead an unreasonable search claim against the Moving Defendants.[10]

     B.  Second Claim for Relief: Excessive Force

Plaintiff's second claim for relief is for excessive force against Defendants Lopez and Lowe. (FAC, Doc. 20 at 4, 19.[11] Moving Defendants argue that the force utilized was not "objectively unreasonable," and was at most, "*de minimis*." (Def. Br. at 16-18; Reply at 3-4). The Court agrees.

"To plead an excessive force claim under the Fourteenth Amendment, a plaintiff must allege that force was applied 'purposefully, knowingly, or (perhaps) recklessly.'" *Harding v. Gould*, No. 22-CV-06285, 2024 WL 3742688, at *5 (S.D.N.Y. Aug. 9, 2024) (quoting *Edrei*, 892 F.3d at 534). "A pretrial detainee must then show that 'the force purposely or knowingly used against him was objectively unreasonable.'" *Taylor v. Quayyum*, No. 16-CV-01143, 2023 WL 5293383, at *7 (S.D.N.Y. Aug. 17, 2023) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015))). Courts consider six non-exhaustive factors in weighing objective reasonableness: "[i] proportionality or, as the [Supreme] Court described it, 'the relationship between the need for the use of force and the amount of force used[;]' . . . '[ii] the extent of the plaintiff's injury; [iii] any effort made by the officer to temper or to limit the amount of force; [iv] the severity of the security

---

[10] Plaintiff has also failed to respond to Moving Defendants' arguments concerning this claim, and fails to mention the strip search claim whatsoever in his opposition. (*See generally* Pl. Opp.). The Court could dismiss the strip search claim on that basis alone. *See, e.g.*, *Clark v. Hutchinson*, No. 23-CV-03271, 2026 WL 445299, at *10 (S.D.N.Y. Feb. 17, 2026) (deeming *pro se* litigant's claim abandoned for failure to address moving party's argument).

[11] As Plaintiff claims to be a pretrial detainee, the Court analyzes Plaintiff's excessive force claim under the Fourteenth Amendment, rather than the Eighth Amendment. *See Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) (whereas "those incarcerated for a criminal conviction draw on the Eight Amendment's ban on 'cruel and unusual punishments,'" "pretrial detainees . . . rely on the constitutional guarantee of 'due process'").

problem at issue; [v] the threat reasonably perceived by the officer; and [vi] whether the plaintiff was actively resisting.'" *Edrei*, 892 F.3d at 534. Finally, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [pretrial detainee's] constitutional rights." *Urena v. City of New York*, No. 22-CV-04679, 2024 WL 4149182, at *4 (S.D.N.Y. Sept. 10, 2024) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Plaintiff claims, in the FAC, that he was "assaulted by Sergeant Lowe and Sergeant Lopez," and as a result of being "physically attacked," he suffered "a shoulder injury due to excessive force" and new health conditions such as "high blood pressure" and "high blood sugar." (FAC, Doc. 20 at 4, 19). Plaintiff further specifies in his opposition that the "physical assault" consisted of Defendant Lowe "placing his right hand at the back of plaintiff's left shoulder to guide him" and when Plaintiff "resisted," Defendant Lowe only "*drew* his OC spray weapon." (Pl. Br., Doc. 87 at 2 (emphasis added)).

As an initial matter, Plaintiff's barebones allegations that he was "assaulted by . . . Sergeant Lopez," without more, is insufficient to state a claim for relief for excessive force against Defendant Lopez. *See Lindner v. Newell*, No. 11-CV-08365, 2013 WL 12617686, at *8 (S.D.N.Y. Mar. 26, 2013) (holding that the "sparse and conclusory nature of Plaintiff's allegation that he was 'assaulted,'" coupled with non-major injuries, was insufficient to state an excessive force claim).

Further, accepting Plaintiff's allegations as true as to Defendant Lowe, Plaintiff similarly fails to state a claim for excessive force. Specifically, that Defendant Lowe guided Plaintiff by touching his shoulder, resulting in an unspecified "shoulder injury," and that Defendant Lowe only unholstered his OC spray in response to resistance from Plaintiff, is insufficient to show anything more than a "*de minimis*" use of force, if any, and is thus not "objectively unreasonable." *See Thomas v. Morley*, No. 20-CV-07520, 2022 WL 394384, at *9 (S.D.N.Y. Feb. 9, 2022) (holding

that where the defendant "grabbed Plaintiff's shirt, [and] slapped Plaintiff" such allegations were "nothing more than the most *de minimis* use of force."); *see also Wims v. New York City Police Dep't*, No. 10-CV-06128, 2011 WL 2946369, at *5 (S.D.N.Y. July 20, 2011) (allegations that plaintiff was "thrown flat on his face unto the filthy ground" were insufficient to state a claim for relief for excessive force, as such allegations are nothing more than "*de minimis*."). Additionally, the simple act of unholstering a weapon, here, the OC spray, without more, does not in and of itself constitute a use of force, especially considering that even "the use of a single burst of a chemical agent, which is not a dangerous quantity, is not 'an unacceptable means of controlling an unruly or disruptive [pretrial detainee].'" *Vazquez v. Spear*, No. 12-CV-06883, 2014 WL 3887880, at *5 (S.D.N.Y. Aug. 5, 2014); *see also Ransom v. Banks*, No. 20-CV-10232, 2022 WL 769344, at *4 (S.D.N.Y. Mar. 14, 2022) (holding that where "exposure to chemical spray was accidental or negligent" such use does not constitute a constitutional violation based on excessive force).

Accordingly, Plaintiff's claim for excessive force in violation of the Fourteenth Amendment is dismissed for failure to state a claim as to the Moving Defendants.

### C. Third Claim for Relief: Retaliation

Construed liberally, Plaintiff pleads a First Amendment retaliation claim, stemming from the alleged June 2, 2025 assault by Defendants Lowe and Lopez that was purportedly in "direct retaliation for federal filings posted April 26, 2025." (FAC, Doc. 20 at 19; Pl. Br., Doc. 87 at 3).

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Handle v. Alexander*, No. 10-CV-09235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). Moving

12

Defendants argue that Plaintiff fails to plead a causal connection between the alleged June 2, 2025 assault and the filing of the lawsuit, because Defendants Lowe and Lopez were not added to the lawsuit until the filing of the Fourth Amended Complaint on June 11, 2025. (Def. Br. at 18; Reply at 5-6). The Court agrees.

Taking Plaintiff's allegations as true, the alleged June 2, 2025 assault was in "direct retaliation" for federal filings on April 26, 2026. (FAC, Doc. 20 at 19). The Court notes, however, upon thorough review of the docket in this matter, that Plaintiff did not include either Defendant Lowe or Defendant Lopez as defendants in this lawsuit until June 11, 2025. (*See* Docs. 20, 21). Therefore, as "the alleged retaliation, [the June 2, 2025 purported assault], occurred before [P]laintiff engaged in the alleged protected activity, [filing a lawsuit against Defendant Lowe or Defendant Lopez], [P]laintiff's retaliation claim must be dismissed." *Dubose v Jimenez*, No. 22-CV-02124, 2023 WL 5237639, at *7 (S.D.N.Y. Aug. 15, 2023); *see also Harper v. The City of New York*, No. 10-CV-07856, 2011 WL 3463156, at *7 (S.D.N.Y. Aug. 5, 2011) (holding that where the "alleged retaliation occurred before plaintiff engaged in the alleged protected activity, plaintiff's retaliation claim must be dismissed.").

As Plaintiff failed to plead facts establishing a causal connection between the protected speech and the adverse action, the retaliation claim pressed against the Moving Defendants must be dismissed.[12]

---

[12] The FAC also includes allegations that the alleged retaliation resulted in the denial of Plaintiff's "[a]ccess to legal materials and religious texts," and "[a]bility to prepare for his June 11, 2025 hearing," with no additional supporting facts. (FAC, Doc. 20 at 19). To the extent the Court may liberally construe these conclusory allegations as claims for First Amendment denial of access to legal materials or free exercise of religion, the Court dismisses both claims for relief, *sua sponte*, under 28 U.S.C. § 1915(e)(2)(B)(ii). The singular conclusory assertions above, without more, are insufficient to state a claim for relief under either theory. *See Terry v. City of New York*, No. 19-CV-09688, 2021 WL 517935, at *2 (S.D.N.Y. Feb. 10, 2021) (failure to claim any "actual injury to a legal claim" is fatal to an access to courts claim); *see also Almonte v. Karth*, No. 21-CV-06062, 2021 WL 4066636, at *2-3 (S.D.N.Y. Sept. 7, 2021) (dismissing Plaintiff's

D.  Fourth Claim for Relief: *Monell* Liability

Plaintiff's fourth claim for relief is brought under *Monell*. Under *Monell* and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-07273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020) ("Plaintiff must plead allegations that 'the government body *itself* subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.'" (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011))). "[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). Such a claim "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cnty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017)).

Because Plaintiff fails to plausibly allege a violation of a constitutional right, any *Monell* claim must be dismissed. *See Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) ("Because [the plaintiff] was unable to establish an underlying violation of his constitutional rights . . . his . . . *Monell* claim necessarily fail[s] as well."); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely

---

free exercise and Religious Land Use and Institutionalized Persons Act ("RLUIPA") under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to comply with Rule 8).

14

correct."). Additionally, Plaintiff failed to plead any municipal custom or policy that was violated here. That failure to plead is likewise fatal to Plaintiff's claim. *See Williams v. Fryermuth*, No. 23-CV-02156, 2024 WL 4557444, at *5 (S.D.N.Y. Oct. 23, 2024).

III.    State Law Claims for Relief

Examining the Complaint with the liberality required of *pro se* pleadings, the Court has construed the pleading as also asserting state-law claims of assault, battery, false imprisonment, intentional infliction of emotional distress, negligent supervision and retention, and medical negligence, pled against Defendant Rockland County, and Defendants Lowe and Lopez in their official and individual capacities. (*See* FAC, Doc. 20 at 2, 20-21).[13] Moving Defendants argue that Plaintiff's state-law claims as pled against Moving Defendants must be dismissed because Plaintiff failed to comply with New York law's notice of claim requirements. (Def. Br. at 22-24; Reply at 4-5). The Court agrees.

General Municipal Law §§ 50–e and 50–i, as incorporated by County Law § 52, together require a plaintiff to serve a notice of claim within 90 days after a claim arises "for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees." N.Y. Gen. Mun. Law §§ 50–e(1), 50–i(1); N.Y. Cnty. Law § 52(1). The "burden is on the plaintiff to demonstrate compliance with the notice of claim requirements," which includes affirmatively pleading compliance with the General Municipal

---

[13] Plaintiff's opposition also references, for the first time, purported claims for "Violation of HALT Act" and "Public Officers Breach of Oath of Office per Article 13 § 1 New York Constitution." (Pl. Br., Doc. 87 at 5). As detailed *infra*, the Court dismisses these claims as well for failure to comply with notice of claim requirements, to the extent these "entirely new" claims may even be pled in opposition papers. *See Ebalu v. New York City Police Department*, No. 21-CV-06476, 2022 WL 4485920, at *3 (S.D.N.Y. June 21, 2022) (noting that while "[a] *pro se* plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers" a court may "consider new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint'").

Law, and with compliance construed "strictly" even as to *pro se* plaintiffs. *Etuk v. City of New York*, No. 24-CV-04957, 2026 WL 366763, at *14 (S.D.N.Y. Feb. 10, 2026) (citing *Morales v. City of New York*, No. 13-CV-07667, 2016 WL 4718189, at *9 (S.D.N.Y. Sept. 7, 2016)). Further, "it is well-settled that 'in a federal court, state notice of claim statutes apply to state-law claims.'" *Asseng v. Cnty. of Nassau*, No. 14-CV-05275, 2015 WL 4621104, at *3 (E.D.N.Y. July 31, 2015) (emphasis omitted) (quoting *Hardy v. N.Y. City Health and Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir.1999)).

The notice of claim requirement applies to Plaintiff's state-law tort claims for relief. *See McLaurin v. New Rochelle Police Officers*, 368 F. Supp. 2d 289, 296 (S.D.N.Y. 2005) (clarifying that County Law § 52 and General Municipal Law §§ 50–e, 50–h, and 50–i, apply to false arrest and false imprisonment claims); *see also Melendez v. County of Westchester*, No. 17-CV-09637, 2019 WL 297519, at *2 (S.D.N.Y. Jan. 23, 2019) (commenting on the expansive scope of County Law § 52, which includes both tort claims and discrimination claims, among others).

It has been more than 90 days since June 2, 2025 (*i.e.*, the latest date on which Plaintiff's claims against Moving Defendants arose), and Plaintiff has not pled that he filed a notice of claim, or that any such notice of claim was served thirty days prior to the commencement of the action. *See* N.Y. Gen. Mun. §§ 50-e(1), 50–i(1). Thus, Plaintiff's state-law claims for relief pled against Defendant Rockland County and Defendants Lopez and Lowe in their official capacities, must be dismissed for failure to comply with the notice of claim requirement. *See, e.g.*, *McLaurin*, 368 F. Supp. 2d at 296; *Culbreth v. Manuel*, No. 24-CV-00497, 2025 WL 35059, at *7 (S.D.N.Y. Jan. 6, 2025).

Construing the FAC liberally, Plaintiff also sues Defendants Lopez and Lowe in their individual capacities. (FAC, Doc. 20 at 2). New York's notice of claim requirements only apply

to suits against individual employees where the County has in place a "statutory obligation to indemnify [the individual defendants] under some provision of law" that is applicable to the challenged conduct in the action. *See Longsworth v. County of Nassau*, No. 17-CV-06787, 2019 WL 8587289, at *6 (E.D.N.Y. July 16, 2019). Additionally, a "county's duty to indemnify one of its officials or employees turns on whether that individual was acting within the scope of his employment, and if that local option was formally adopted by a local governing body." *Pinero v. Casey*, No. 10-CV-04803, 2012 WL 832509, at *14 (S.D.N.Y. March 13, 2012), *adopted by* 2012 WL 1059674 (S.D.N.Y. March 29, 2012). Thus, in order for the notice of claim requirements to apply to Defendants Lopez and Lowe in their individual capacities, the County of Rockland must have a statutory obligation to indemnify them, and Defendants Lopez and Lowe must have been acting within the "scope of their employment." Moving Defendants argue that as the Rockland County Code provides such a statutory obligation, and as pled, Defendants Lopez or Lowe were acting within the scope of their employment, the notice of claim requirements apply and serve to bar Plaintiff's state-law claims as pled against Defendants Lopez and Lowe. (Def. Br. at 22-24).

Rockland County Code § 45-3(A) requires the County to indemnify its employees "in the amount of any judgment obtained against such employee in any municipal, state or federal court, or in the amount of any settlement of a claim, provided that the act or omission from which such judgment or settlement arose, occurred while the employee was acting in good faith and within the scope of his or her public employment or duties." (Def. Br. at 22; Rockland County Code § 45–3(A) (1989), *available at* http://www.ecode360.com/9663648). In light of the County's statutory obligation to indemnify its employees, and as the conduct of Defendant Lopez and Defendant Lowe, as pled, plainly had a "work-related purpose" sufficient to show they were acting within the scope of their employment, *see Idiakheua v. New York State Dep't of Corr. & Cmty. Supervision*,

17

No. 20-CV-04169, 2022 WL 10604355, at *15 (S.D.N.Y. Oct. 18, 2022), the Court finds that the notice of claim requirements apply as to these defendants in their individual capacities. *See Pinero*, 2012 WL 832509, at *14 (analyzing the same Rockland County Code provision and dismissing the County defendants for failure to comply with the notice of claim requirements).

Accordingly, to the extent Plaintiff's complaint includes state-law claims against Defendants Lopez and Lowe in their individual capacities, such claims are dismissed for failure to comply with the applicable notice of claim requirements.

Any state law claims Plaintiff wishes to press against Moving Defendants are, accordingly, dismissed.[14]

IV.    Leave to Amend

Finally, Plaintiff, at the end of his opposition brief, requests that the Court "allow him to [a]mend his complaint, if necessary, upon completion of discovery." (Pl. Br., Doc. 87 at 5). This request is both procedurally and substantively improper. *See Thomas*, 2022 WL 394384, at *16 ("Plaintiff's request to amend, contained solely in [his] opposition memorandum, is procedurally defective since a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading[,] is improper under Fed. R. Civ. P. 15."); *Jackson v. Annucci*, No. 20-CV-02008, 2021 WL 2581340, at *2 (S.D.N.Y. June 23, 2021) (denying motion for default judgment made in opposition brief); *Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *12

---

[14] Plaintiff, in opposition, appears to concede that he failed to comply with the notice of claim requirements, arguing instead that "Plaintiffs [sic] alleged failure to file a notice of claim does not bar federal claims," but that he "did notify defendants on 6/11/25." (Pl. Br., Doc. 87 at 4). Even construing such a statement, made in an opposition brief, as true, this conclusory allegation does little to save his state-law claims, as Plaintiff nevertheless fails to plead his compliance with the General Municipal Law and/or County Law in the FAC (*see generally* FAC), and failed to comply with General Municipal Law § 50–i(1), which requires that the Plaintiff affirmatively plead that the notice of claim was served thirty days *prior* to the commencement of the action. N.Y. Gen. Mun. § 50–i(1). Notification on the same date the FAC was filed is plainly insufficient.

(S.D.N.Y. Feb. 17, 2021) (denying request for sanctions made in opposition brief); *Martin v. Mihalik*, No. 19-CV-07979, 2021 WL 1738458, at *1 (S.D.N.Y. May 3, 2021) (denying motion for pro bono counsel made in opposition brief); *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, No. 04-CV-02199, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011) (declining to consider a "cross-motion" made in opposition brief).

Even if the Court were to construe Plaintiff's request in his opposition brief as a sufficient alternative to the motion requirement, *see* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."), Plaintiff fails to meet his burden for an amendment. *See* Fed. R. Civ. P. 15. He does not offer any new facts that would cure the substantive deficiencies discussed above, or articulate why an amendment would not be futile. Further, the operative pleading is Plaintiff's fifth iteration, and Plaintiff declined the opportunity to file a fifth amended complaint prior to this motion practice. (*See* Doc. 29 at 11). Accordingly, leave to amend is denied. *See Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (explaining that "leave to amend is not necessary when it would be futile"); s*ee, also Andrews v. Officer From Sullivan Corr. Facility*, No. 21-CV-10518, 2022 WL 1597695, at *3 (S.D.N.Y. May 19, 2022) (denying leave to amend when the *pro se* plaintiff had already been given an opportunity to amend and correct deficiencies in the original pleading).

## CONCLUSION

For the foregoing reasons, Moving Defendants' motion to dismiss is GRANTED.

The Clerk of Court is respectfully requested to: (1) terminate Rockland County, Lowe, Lopez, and "All State Actors" as defendants; (2) terminate the pending motion (Doc. 79); and (3) mail a copy of this Opinion and Order to Plaintiff.

The Court will separately docket a Notice of Initial Conference for the remaining Defendants.

19

**SO ORDERED.**

Dated:   White Plains, New York
          May 13, 2026

PHILIP M. HALPERN
United States District Judge

20